# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
### CENTRAL DIVISION

IRENE MARIA ZIMBOBWE           )
SCHWARTZE BRAMBLETT,           )
                               )
       Plaintiff,           )
                               )
     v.                    )     No. 2:14-cv-04078-NKL
                               )
CITY OF COLUMBIA, MISSOURI,    )
et al.,                        )
                               )
       Defendants.          )

## ORDER

Defendants' motion for summary judgment, Doc. 102, is granted in part and denied in part.[1]  Defendants' motion is granted with respect to Plaintiff's Count II: Prima Facie Tort and Count IV: Due Process Liberty Interest.  Defendants' motion is denied with respect to Plaintiff's Count III: Due Process Property Interest and Count I: Breach of Contract.

## I.     Undisputed Facts

Plaintiff Irene Maria Zimbobwe Schwartze Bramblett ("Schwartze") is a former employee for the City of Columbia, Missouri ("City").  Prior to May 14, 2009, Schwartze worked as a Police Captain for the City.  On May 14, Schwartze was appointed temporary Emergency Communications and Management Administrator ("ECMA

---

[1] Three Defendants are named in this action: the City of Columbia, Kenneth Burton, and Michael Matthes.

Administrator").[2]  At that point, she was approximately two years and nine months from becoming eligible for retirement under the police pension.  Schwartze would not have accepted the ECMA Administrator position if the assignment affected her police pension.  To ensure that Schwartze's pension eligibility was not affected, she was paid for her work as ECMA Administrator from the City's Police Department budget and remained a captain in the department.  On October 5, 2009, Bill Watkins, then acting City Manager, offered Schwartze a permanent position as ECMA Administrator.  The terms of this job offer were laid out in a memorandum (the "October 5, 2009 Agreement"):

> I am pleased to offer you the position of ECMA for the City of Columbia.  Should you agree to accept this offer the following are the terms and conditions of your appointment as Emergency Communications and Management Administrator.
>
> You will remain a Columbia Police Department captain assigned to the position of Emergency Communications and Management Administrator.  Your assignment will end when you first become eligible to retire under the police pension plan.  At that time you will have the option of being reassigned to the Police Department or retiring under the police pension plan and continuing as the Emergency Communications and Management Administrator.  If you continue as Administrator, you will be covered by the LAGERS retirement system.
>
> You must inform me of your decision to return to the Police Department or remain as Administrator at least six months before you first become eligible for retirement under the police pension plan.

---

[2]  In 2010 this position was changed to the Director of Public Safety Joint Communications and Emergency Management Director.  Because this change did not affect Schwartze's job duties the Court will, for ease of communication, use the title ECMA Administrator throughout this order to refer to the job held by Schwartze.

2

> Of course, your assignment to the position of Administrator as well as your option to continue as Administrator is subject to satisfactory job performance.

City Exhibit 22, Doc. 103-22. This Agreement was signed by both Schwartze and Watkins.

As ECMA Administrator, Schwartze was paid about $15,000 more than the prior ECMA Administrator had been paid due to the funding of her position through a captain position in the City's Police Department. Despite continuing to be paid from the Police Department budget, after becoming ECMA Administrator Schwartze performed no police duties and did not report to the Police Chief, Kenneth Burton. The Police Captain position was a "classified" position under the City Ordinances.

In May 2011, Michael Matthes became the City Manager. When Matthes became City Manager, the City was operating at a nearly $3 million deficit. By 2012, the City had a $1.9 million surplus because Matthes put a hiring freeze in effect.

Schwartze became eligible to receive police pension benefits on February 2, 2012. As set out in the October 5, 2009 Memorandum, Schwartze was to have the option at that point to remain as ECMA Administrator or return to the Police Department. In May 2011 and numerous times thereafter Schwartze had conversations with Matthes wherein she indicated her intention to retire from the Police Department in February 2012 and serve solely as the ECMA Administrator.

In late 2011 and early 2012, Eric Anderson, an independent consultant, conducted a review of the administration of the Police Department. Schwartze met with Anderson

one time and was critical of Burton but not Matthes. She has no knowledge of anything she said to Anderson being relayed to Burton or Matthes.

Sometime after Schwartze's meeting with Anderson, on January 18, 2012 Matthes told Schwartze he was considering eliminating the ECMA Administrator position. Schwartze asked during this meeting whether going back to the Police Department as captain was an option; Matthes indicated that he would think about it and get back to her. Matthes reiterated that the City was in the process of eliminating the ECMA Administrator position at a meeting with Schwartze in February 2012. During that meeting Matthes told Schwartze she could not return to the Police Department. Schwartze did not express an opinion at that point about what she planned to do moving forward. On February 6, 2012, Burton emailed Matthes and complained that Schwartze was "stonewalling."

On May 9, 2012, Matthes presented Schwartze with two options: she could voluntarily resign and retire from her job as ECMA Administrator and begin drawing her police pension, or she would be eliminated. Matthes gave Schwartze less than one hour to decide whether to accept the resign/retirement scenario or be eliminated. Schwartze consulted with her attorney, and decided not to resign. After being informed of Schwartze's decision, Matthes provided her a letter stating that she was placed on administrative leave, effective immediately. At around 5:00 p.m., Matthes sent an email to the Mayor, City Council, and senior staff stating that Schwartze was on paid administrative leave pending action at the next City Council meeting to amend the budget. Burton then sent an email to the Police Department stating that Schwartze was

4

no longer an administrator of the City and Schwartze's access to the building was restricted to areas open to the general public unless she was accompanied by an escort. After learning of Schwartze's removal, Deputy Police Chief Stephen Monticelli emailed Burton and stated, "Wow, there has to be a story there? She step in it again?" Burton responded, "we will talk later."

Watkins believes the City's termination of Schwartze was "poorly handled," and has noted that in the sixteen years in which he served as Assistant City Manager and City Manager, he never laid off or terminated a department head without cause. In his experience, employees laid off for budgetary reasons were not terminated immediately, were not locked out of their officers, were not locked out of their computers, and were not escorted by police or human resources staff off of City property. City Attorney Fred Boeckmann made statements similar to Watkins' regarding the irregularities surrounding Schwartze's termination.

On May 17, 2012, Schwartze's attorney filed a "Complaint/Grievance/Appeal" under the City's Ordinances. On June 11, 2012, Matthes denied Schwartze's Complaint/Grievance. On June 14, Schwartze requested a hearing before the Personnel Advisory Board. The City informed Schwartze that layoffs are not subject to hearings before the Board.

On June 4, 2012, the City Council voted to eliminate the ECMA Administrator position. However, prior to that date Matthes had indicated to Schwartze that even if the City Council did not vote to eliminate the position, that would not change his decision to terminate Schwartze.

5

Joe Piper and Fire Chief Scott Olsen were assigned Schwartze's work after she was terminated. Piper received a raise and a promotion. The City also requested that Donna Hargis return to work from retirement to help with the workload in Schwartze's absence. Following Schwartze's separation of employment from the City, she asked to be placed on a reemployment list. This reemployment list exists because City Ordinance 19-211 states that laid off employees will be given "first consideration" for the position that was eliminated or similar positions. In October 2012, Schwartze applied for the deputy chief of police position and was considered but not selected. Instead, the City hired Diane Bernhard, an internal applicant already working in the Police Department. Matthes did not know Schwartze applied for the deputy chief position. Captain positions opened in September 2012 and August 2013 and both positions were filed internally.

## II.    Discussion

### A.    Count III: Due Process Property Interest

Schwartze has brought two due process claims under 42 U.S.C. § 1983. In order to have a successful claim under § 1983, the plaintiff must be able to prove that "1) defendant deprived plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States, and 2) defendant was acting under the color of state law at the time of the conduct constituting the deprivation." *Foremost Ins. Co. v. Public Serv. Comm'n of Mo.*, 985 S.W.2d 793, 796 (Mo. Ct. App. 1998).

Schwartze contends that Defendants violated her procedural due process rights when they terminated her from her job as ECMA Administrator and refused to let her return to a job at the Police Department. In order for a government employee to have a

6

right to procedural due process, they must be deprived of a constitutionally protected property or liberty interest. *Christiansen v. W. Branch Cmty. Sch. Dist.*, 674 F.3d 927, 934 (8th Cir. 2012). Property interests in employment generally arise from limitations on an employer's right to terminate an employee. *Daniels v. Bd. of Curators of Lincoln Univ.*, 51 S.W.3d 1, 7 (Mo. Ct. App. 2001). Due process requires notice, an opportunity to respond to the charges before termination, and post-termination administrative review. *Id.* Schwartze contends that she had a protected property interest in her employment with the City pursuant to 1) the October 5, 2009 Agreement, 2) the City Ordinances and Charter, 3) City customs and practices, or 4) some combination of the above.

Regardless of the content of the October 5, 2009 Agreement and the City's customs and practices with respect to her employment, Schwartze had a property interest in her employment under the City Ordinances. Section 19-237 of the City Code sets out the grievance procedure that applies to all classified employees who have "an action taken against them . . . without just cause." This "just cause" requirement mandates that an employee receive due process before being terminated. Defendants have conceded for the purpose of the summary judgment motion that Schwartze was a classified employee. Therefore, she was entitled to due process before being separated from her job for reasons other than a layoff.

Here, there is a factual dispute regarding whether Schwartze's position was terminated due to a lack of funds or curtailment of work, or whether she was separated from employment for some other reason. While the City consistently told Schwartze that she was being laid off and her position as ECMA Administrator was being eliminated,

7

the City has conceded other facts which support Schwartze's contention that her layoff was pretext for a termination due to animus. For example, Burton believed that Schwartze had made comments critical of him and how he ran the Columbia Police Department and thought that she was a contributor to the toxic supervisory culture. The record also suggests that the way in which Schwartze was removed from her job was unprecedented. Moreover, the City's budget accommodated for Schwartze's positions, and Matthes admitted that even if the City Council had refused to eliminate Schwartze's position from the budget, Schwartze would not be reinstated in her position. Defendants also declined to rehire Schwartze when later positions became available, even though she had a right to "first consideration" under the Ordinances.

If Schwartze was separated from her position as ECMA Administrator for reasons other than a layoff, she was entitled to due process in the course of her separation. Due process may consist of both pre- and post-deprivation procedures. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 541-42 (1985). Inadequate pre-deprivation procedures may be cured by extensive post-deprivation procedures. *Id.* at 546-48.

The pre-deprivation process afforded Schwartze was insufficient if she was fired rather than laid off. Schwartze was notified months before her termination that her superiors were considering eliminating her position and discussed this situation with Matthes multiple times before her termination. However, Defendants' only explanation for her termination was that budget cuts necessitated her position being eliminated, a contested issue. Schwartze was not notified of other underlying reasons for her termination or given a chance to respond to any accusations against her. If Schwartze is

8

able to prove that the layoff was pretext for termination for some other reason, she was denied due process in not being informed of the real reasons for her termination or given a chance to respond. Inherent in the concept of due process is the opportunity for the accused to respond to the accusations being levied against her. Where the accused is not informed of the actual reasons for her termination so as to have a chance to respond to the actual cause of the termination, there can be no due process.

Assuming the layoff was a pretext for her termination, Schwartze was also afforded insufficient post-deprivation process. Defendants contend that Schwartze could have appeared at the City Council meeting on June 4, 2012 to contest the elimination of the ECMA Administrator position. However, the City Council meeting was not an adversarial proceeding wherein Schwartze had the opportunity to address the merits of the reasons for her termination. *See St. Louis County v. State Tax Commission*, 608 S.W.2d 413 (Mo. banc 1980) (noting that "[t]he element of adversity is essential to the meaning" of contested case). The City continued to maintain at the time of the Council meeting that Schwartze's position was being eliminated due to budgetary issues. If Schwartze is able to demonstrate that these purported budgetary issues were pretext for her termination, she was never notified of the actual reasons for her discharge to be able to respond to the accusations against her. Moreover, the City Council meeting cannot fairly be called an adversarial proceeding meant to give Schwartze an opportunity to vindicate her rights. She was not guaranteed the opportunity to speak at the meeting. Furthermore, the issue before the Council related to the budget and not substantive complaints against Schwartze. Any commentary she would have provided regarding her

9

personal job performance or workplace issues would have been irrelevant to the underlying budget considerations at the meeting.

The City also failed to provide Schwartze with an adversarial hearing when she requested one. Schwartze submitted a Complaint/Grievance/Appeal pursuant to Chapter 19 of the City Ordinances after she was placed on administrative leave. Matthes denied this Complaint/Grievance/Appeal on June 11, 2012. Her subsequent request for a hearing before the Personnel Advisory Board was also denied.

Defendants contend that Schwartze's failure to participate in a post-termination hearing waived her procedural due process claim. Exhaustion of administrative remedies is generally not required in order for a plaintiff to pursue a section 1983 action. *Webb v. Board of Educ. of Dyer County, Tenn.*, 471 U.S. 234, 248 (1985). However, the Eighth Circuit did hold in *Krentz v. Robertson Fire Protection District*, 228 F.3d 897 (8th Cir. 2000), that the plaintiff waived his procedural due process claim by failing to participate in post-termination proceedings under MAPA. In contrast to Schwartze's situation, however, the plaintiff in *Krentz* was provided notice of a meeting at which he would have an opportunity to respond to defendants' decision to terminate him. Schwartze was specifically denied such an opportunity when she requested it. She did not waive her procedural due process claim by failing to engage in post-termination proceedings which she was explicitly denied.[3]

---

[3] Defendants also argue that the contested and uncontested case distinction hinges on whether a hearing is required, rather than granted, and that if Schwartze is correct that she was entitled to a hearing this is an uncontested case because she failed to avail herself of post-termination proceedings under MAPA. This argument contradicts common sense.

Finally, Defendants Burton and Matthes argue that they are entitled to qualified immunity for this claim. They are entitled to qualified immunity unless Schwartze can show (1) that her constitutional right was violated and (2) that the right was clearly established at the time of the alleged misconduct. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In order to be clearly established, the right must be sufficiently clear that a reasonable official would understand that their actions violated the right. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

The rule that public employees who have protected interests in their employment must be provided adequate process in termination is well settled. *See Young v. City of St. Charles, Mo.*, 244 F.3d 623 (8th Cir. 2001). Defendants also do not contest that it is clear that a pretextual layoff may not be used to avoid procedural due process obligations. *See Lalvani v. Cook County, Ill.*, 269 F.3d 785, 793 (7th Cir. 2001). As Defendants have conceded that Schwartze was a classified employee, she was clearly entitled to due process for any separation other than for layoff. Given the above described factual disputes, Burton and Matthes are not entitled to qualified immunity at this time.

Burton contends that he is individually entitled to summary judgment on this claim because Schwartze has presented no evidence that he was involved in the decision to eliminate the ECMA Administrator position, terminate Schwartze, or not allow her to

---

Defendants concede that Schwartze requested an administrative hearing, which she was denied. If a hearing was required in relation to her termination, this denial constitutes the due process violation. *See Sapp v. City of St. Louis*, 320 S.W.3d 159, 165 (Mo. Ct. App. 2010) ("Sapp's right to due process was violated when he did not get a contested case hearing."); *see also Guelker v. Director of Revenue*, 28 S.W.3d 488, 491 (Mo. Ct. App. 2000) ("the law will not require the doing of a useless and futile act.").

Case 2:14-cv-04078-NKL   Document 118   Filed 09/22/15   Page 11 of 21

return to the Police Department. However, Schwartze has presented facts to indicate that Burton had conversations with Matthes about the decision to terminate Schwartze. Moreover, Schwartze contends that Matthes informed her that he was not the one responsible for deciding whether Schwartze could be reemployed at the Police Department. It can be reasonably inferred from these facts that Burton, the Police Chief, was involved in making this decision. In addition, there are facts to support an inference that Burton had a negative relationship with Schwartze. Given the factual disputes regarding Burton's role in Schwartze's termination, he is not entitled to summary judgment on this claim.

As the record contains factual disputes regarding the underlying reasons for Schwartze's separation from employment and who was involved in that decision, and because she was provided insufficient process if she was terminated for reasons other than a layoff, the Defendants' motion for summary judgment is denied as to Count III.

**B.      Count IV: Due Process Liberty Interest**

Schwartze also contends that Defendants infringed upon her Due Process rights in stigmatizing her in connection with her termination, which resulted in a violation of her liberty interests. Specifically, Defendants had a police officer escort her out of the building following her termination, did not allow her to gather her personal belongings after her termination, locked her out of her office, and refused to allow her to be in non-public portions of the police station without an escort. There was also a department wide email sent out regarding her removal from the department.

12

In order to show a violation of her liberty interests, Schwartze must be able to demonstrate that "(1) an official made a defamatory statement that resulted in stigma; (2) the defamatory statement occurred during the course of terminating the employee; (3) the defamatory statement was made public; and (4) an alteration or extinguishment of a right or legal status." *Crooks v. Lynch*, 557 F.3d 846, 849 (8th Cir. 2009). The Eighth Circuit described the extent of the defamatory statements that must be alleged before they are actionable under § 1983 in *Jones v. McNeese*, 746 F.3d 887, 898 (8th Cir. 2014):

> For a defamatory statement to be actionable under § 1983, it must go beyond "alleging conduct [by the plaintiff] that fails to meet professional standards," *Raposa v. Meade Sch. Dist. 46-1*, 790 F.2d 1349, 1354 (8th Cir. 1986). Rather, the statement must "damage[ ] a person's standing in the community or foreclose[ ] a person's 'freedom to take advantage of other employment opportunities.'" *Id.* (quoting *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). "The requisite stigma has generally been found in cases in which [a government official] has accused the [plaintiff] of dishonesty, immorality, criminality, racism, or the like." *Shands v. City of Kennett*, 993 F.2d 1337, 1347 (8th Cir. 1993) (collecting cases).

The Eighth Circuit then concluded that the McNeese's statements that Jones may have engaged in ethically questionable conduct, visited inmates at a prison which was a practice the defendant saw as highly inappropriate, and committed an "ethical breach" did not "create the level of stigma required to implicate a constitutionally protected liberty interest." *Id.* (quotation omitted).

Schwartze admits that she is unaware of any disparaging remarks made by Matthes or Burton regarding her termination. The only other statement made regarding Schwartze's termination was the email sent to the City employees informing them that

13

Schwartze was no longer employed by the City, and Defendants' actions in removing her from the building after she was placed on administrative leave. Schwartze has presented no evidence of Defendants ever accusing her of dishonesty, immorality, criminality, racism, or anything along those lines. *Mascho v. Gee*, 24 F.3d 1037, 1039 (8th Cir. 1994). Simply removing a terminated employee from the building or preventing access to records is not sufficient to infer such an accusation. The Eighth Circuit has specifically rejected the idea that a stigma can be "created by innuendo from inferences drawn from general allegations of misconduct and insubordination." *Id.* Here, there is no evidence that Defendants publically accused Schwartze dishonesty, immorality, criminality, racism or anything similar. Defendants are entitled to summary judgment on Count IV.

### C.     Counts I and II: State Law Claims

#### 1.     Contract Claims[4]

Schwartze contends that Defendants breached the October 5, 2009 Agreement or other contractual protections afforded by the Ordinances and customs, policies, and practices of the City. In addition to arguing that Defendants breached the explicit terms of these alleged contracts, Schwartze argues that Defendants breached the implied covenant of good faith and fair dealing.

Schwartze contends that the October 5, 2009 Agreement as supplemented by the Ordinances, customs, practices, and policies of the City created an implied in fact contract to provide her contractual protections to which the implied duty of good faith

---

[4] The following discussion relates solely to Schwartze's state law claims and not the § 1983 claims. As previously discussed, being a classified employee alone triggered a right to due process.

Case 2:14-cv-04078-NKL   Document 118   Filed 09/22/15   Page 14 of 21

and fair dealing applies. The parties have submitted inadequate briefing on this issue for the Court to be able to determine at this point whether an implied in fact contract was created. However, *Perry v. Sindermann*, 408 U.S. 593 (1972), clearly supports Schwartze's contention that "[e]xplicit contractual provisions may be supplemented by other agreements implied from 'the promisor's words and conduct in light of the surrounding circumstances." Given this precedent and Defendants' failure to respond to the merits of Schwartze's arguments regarding the existence of an implied in fact contract, summary judgment is denied on this argument at this time.

Schwartze alternatively argues that the October 5, 2009 Agreement constituted a complete and unambiguous contract for employment, which granted her a right to continued employment by the City. The Agreement between Schwartze and the City provided as follows:

> I am pleased to offer you the position of ECMA for the City of Columbia. Should you agree to accept this offer the following are the terms and conditions of your appointment as Emergency Communications and Management Administrator.
>
> You will remain a Columbia Police Department captain assigned to the position of Emergency Communications and Management Administrator. Your assignment will end when you first become eligible to retire under the police pension plan. At that time you will have the option of being reassigned to the Police Department or retiring under the police pension plan and continuing as the Emergency Communications and Management Administrator. If you continue as Administrator, you will be covered by the LAGERS retirement system.
>
> You must inform me of your decision to return to the Police Department or remain as Administrator at least six months before you first become eligible for retirement under the police pension plan.

> Of course, your assignment to the position of Administrator as well as your option to continue as Administrator is subject to satisfactory job performance.

City Exhibit 22, Doc. 103-22. Schwartze relies on the Agreement's provision that the terms of the Agreement are "subject to satisfactory job performance" to support her contention that the Agreement conveyed on her a right to continued employment.

In order for an employment contract to override the general rule that employment is provided on an at-will basis terminable by either party, the contract must express a specific duration or some specified limitations on discharge. *Morrow v. Hallmark Cards, Inc.*, 273 S.W.3d 15, 26 (Mo. Ct. App. 2008). The Agreement specified that Schwartze was to be employed as "a Columbia Police Department captain assigned to the position of Emergency Communications and Management Administrator" until she "first bec[a]me eligible to retire under the police pension plan." This provision set out a specific duration to override the at-will employment rule through February 2, 2012, the date Schwartze became eligible to retire under the pension.

The contract also provided that when her assignment as ECMA Administrator ended, Schwartze had the right to exercise an option to remain the ECMA Administrator or return to the Police Department. The Agreement specified that Schwartze's assignment to the ECMA Administrator position, as well as the right to exercise the option, were "subject to satisfactory job performance." As employment contracts are presumed to be at will absent language to the contrary, and all words in a contract must be given meaning, the most reasonable interpretation of the Agreement is that it

16

guaranteed Schwartze exemption from at will employment at least until her assignment ended and she exercised her option.

Schwartze has argued that Defendants breached the covenant of good faith and fair dealing in terminating her employment. Missouri law implies the covenant of good faith and fair dealing in every contract. *Farmers' Elec. Coop. v. Mo. Dep't of Corr.*, 977 S.W.2d 266, 271 (Mo. banc 1998). "[W]here a contract confers on one party a discretionary power affecting the rights of the other, a duty is imposed to exercise the discretion in good faith and in accordance with fair dealing." *City of St. Joseph v. Lak Contrary Sewer Dist.*, 251 S.W.3d 362, 369 (Mo. Ct. App. 2008) (quotation omitted). This duty obligated Defendants to act with good faith in allowing Schwartze to exercise her option to remain as ECMA Administrator or return to the Police Department. The record contains factual disputes which prevent resolution of this claim. The parties disagree about whether Schwartze was laid off or terminated for some other reason. They also disagree about the existence and severity of any budget shortages the City was experiencing at the time Schwartze's positions were cut. If the police captain and ECMA Administrator positions were eliminated for the purpose of mooting Schwartze's option and forcing her out of City employment, this would violate the covenant of good faith and fair dealing.

Defendants raise a myriad of arguments regarding alleged procedural defects in the October 5, 2009 Agreement which they contend prevented the Agreement from conveying Schwartze any contract rights. Most notably, they argue that the execution of the Agreement conflicted with the City Charter, which states that the City Manager has

17

the power to "remove all officers and employees of the city," and that all contracts contrary to the Charter are void. They also note that the Charter requires that all contracts be certified in writing by the Director of Finance to be valid and binding on the city.[5]

Defendants contend that a contract which does not comply with statutory or charter requirements is automatically void and cannot be validated by substantial compliance. The Court concludes that the weight of Missouri case law on this topic supports the application of substantial compliance to the October 5, 2009 Agreement. In *Veling v. City of Kansas City*, 901 S.W.2d 119 (Mo. Ct. App. 1995), the Missouri Court of Appeals concluded that the fact that an employment contract was not certified by the Director of Finance in accordance with the Kansas City Charter did not prevent the existence of a contract under the doctrine of substantial compliance. The court distinguished contrary precedent because the case at bar involved an employment contract, and did not involve allegations of fraud or equitable estoppel, or an attempt to enforce an oral contract. None of those elements are present in Schwartze's case. The Missouri Court of Appeals also noted that its conclusion in *Veling* was consistent with the court's prior decision in *Lynch v. Webb City School Dist. No. 92*, 418 S.W.2d 608 (Mo. Ct. App. 1967), which also found that substantial compliance in an employment contract was sufficient to create a valid contract. Schwartze's claim, like those in *Veling* and *Lynch*, involves a dispute over an employment contract where the plaintiff alleges not

---

[5] It is unclear how these arguments bear on the validity of any implied in fact contract, and the parties have not yet addressed that issue. Therefore, the Court will not resolve that issue on summary judgment.

that the City Charter should be circumvented, but that there was substantial compliance with its requirements. *See Veling*, 901 S.W.3d at 124 ("Veling is not asking the courts to overlook a statutory or charter requirement for a valid contract with a municipality in arguing for the application of equitable estoppel; instead, Veling asks the court to find he "substantially complied" with the requisite elements of section 432.070, and the Kansas City Charter."). The Defendants cite to *Ballman v. O'Fallon Fire Protection District*, 459 S.W.3d 465 (Mo. Ct. App. 2015), to support their position that substantial compliance cannot redeem contracts which are deficient under the explicit terms of the City Charter. However, *Ballman* does not address substantial compliance. Based on the briefing and the clear rules set out in *Veling* and *Lynch* regarding substantial compliance in city employment contracts, the Court cannot say that *Ballman* has overruled *Veling*, *Lynch*, and their progenies.

Though the Court has concluded that the doctrine of substantial compliance may be sufficient to override any deficiencies in the approval of the October 5, 2009 Agreement to create an enforceable employment contract, there are factual disputes which prevent the Court from determining at this point whether there was adequate compliance with the Charter to make the Agreement enforceable. Whether the Agreement was sufficiently approved by the Director of Finance and City Manager to have substantially complied with the Charter requirements is appropriate for resolution at

trial.[6]  The Court therefore declines to grant Defendants' motion for summary judgment as to Count I.

### 2. Prima Facie Tort Claim

Finally, Schwartze has alleged a prima facie tort claim against Matthes and Burton. "In order to establish a prima facie tort, the plaintiff must prove: (1) an intentional lawful act by the defendant, (2) defendant's intent to injure the plaintiff, (3) injury to the plaintiff, and (4) an absence of, or insufficient justification for defendant's act." *Woolsey v. Bank of Versailles*, 951 S.W.2d 662, 668 (Mo. Ct. App. 1997). "The plaintiff must show specific, clear-cut, express malicious intent to injure; mere intent to do the act which results in injury is not sufficient." *Id.* at 669. This is a "'heavy' burden." *Kiphart v. Community Federal Sav. & Loan Ass'n*, 729 S.W.2d 510, 517 (Mo. Ct. App. 1987).

Construing all allegations in favor of Schwartze, she has failed to show sufficient malicious intent for her to maintain a prima facie tort claim. Schwartze argues that this malicious intent is apparent from Defendants' belief that she was not "on board" with their management style, their decision to fire her without cause and to fabricate a reason for her termination, and the way she was treated after her termination. While these facts support Schwartze's contention that Defendants removed her from her job, they are insufficient to demonstrate that Defendants had a malicious intent to injure Schwartze.

---

[6]Defendants further argue that any promise of indefinite employment in the Agreement was illusory. As Schwartze agreed to take the job as ECMA Administrator as consideration for the contract set out in the Agreement, the contract was not illusory.

Schwartze has presented no evidence that Defendants acted to prevent her from obtaining future employment or attempted to deprive her of anything beyond her employment. There is also no evidence that Burton's sarcastic commentary on his inclusion in an email addressed to Schwartze's "friends" and statement that her accepting a new position elsewhere was "wonderful" for the City had any independent injurious effect on Schwartze beyond her termination.

As Schwartze has failed to demonstrate sufficient malicious intent or that she suffered harm beyond her termination, Defendants are entitled to summary judgment on Count II.

## III. Conclusion

For the reasons set forth above, summary judgment is granted for the Defendants on Counts II and IV. Defendants' motion is denied with respect to Plaintiff's Count III and Count I.

/s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: September 22, 2015
Jefferson City, Missouri